**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JAMES C. DAVIS, ) | |
|     Plaintiff, ) | |
| vs. ) | No.  3:14-CV-1725-G-BH |
| ) | |
| DEPARTMENT OF VETERANS ) | |
| AFFAIRS, et al., ) | |
|     Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.  Before the Court for recommendation is *Defendant's Motion to Dismiss*, filed March 25, 2016 (doc. 19).  Based upon the relevant filings and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

On May 9, 2014, James C. Davis (Plaintiff) filed this *pro se* action against the Department of Veterans Affairs, the Veterans Affairs Hospital Dallas, and the Veterans Affairs Fiduciary Department[1] (collectively Defendants or VA) alleging civil and constitutional right violations under the Federal Tort Claims Act (FTCA).  (*See* doc. 3 at 1-2.)[2]

On December 12, 2005, the Board of Veterans Appeals (Board) ordered Plaintiff to undergo a medical examination to determine whether his previously diagnosed psychiatric disorder had become more severe.  (doc. 19 at 5.)  He subsequently met with Shanan Wayne, PsyD, L.P., who determined that he met the diagnostic criteria for schizoaffective disorder and required "some

---

[1] Though Plaintiff distinguishes the Veterans Affairs Hospital and Fiduciary Department, they are both administrative organizations that are a part of the Department of Veterans Affairs.  (*See* docs. 16, 18.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

assistance in managing his funds" because of frequent mood and thought disturbances. (doc. 20 at 68-73, 77-82.) On January 23, 2007, Plaintiff was notified by the Board that it was finding him incompetent for VA administrative purposes due to his schizoaffective diagnosis. (*Id*. at 68.) He was also informed that, if he was declared incompetent, "a fiduciary may be appointed to help [him] manage [his] benefits," in which case "[p]ayment of any money due [to him would] be made directly to [his] fiduciary." (*Id.*) He was further notified that he had the right to request a hearing to contest the finding and that a rating of incompetent would affect his ability to purchase a firearm pursuant to the Brady Handgun Violence Prevention Act contained in 18 U.S.C. §922(g). (*Id.*)

On February 7, 2007, Plaintiff, through his accredited representative, waived his right to a competency hearing and requested appointment of a specific payee representative on his behalf. (*See id.* at 65-67.) The VA then issued a decision finding that he was not competent to handle disbursement of his veteran benefit funds and appointed his daughter as his fiduciary. (*See* doc. 3 at 18.) On July 2, 2009, he requested a new fiduciary, and he was appointed a paid federal fiduciary who ultimately resigned in September 2010. (*See* doc. 20 at 59.)

On October 27, 2010, the VA appointed another paid federal fiduciary, Jim Schampers, to become the legal custodian of Plaintiff's VA benefits. (*See id.* at 42-43.) On June 17, 2013, Mr. Schampers notified the VA that Plaintiff had been withdrawing money from the custodial account that the fiduciary controlled, and that he had contacted the bank to refund the withdrawn amount back to the custodial account. (*Id*. at 43.) Mr. Schampers later notified the VA that Plaintiff had accused him of stealing his funds because the bank had reimbursed the custodial account from Plaintiff's non-VA account. (*Id*. at 42.)

Plaintiff proceeded to file four administrative tort actions against VA personnel between

April 14, 2013, and September 5, 2013, making various complaints of defamation, falsification of medical records, mismanagement of funds by his fiduciaries, and improper designation of him as incompetent. (*Id*. 15-21.) All claims were denied because they were not cognizable under the FTCA and because they fell under the sole jurisdiction of the United States Court of Appeals for Veterans Claims. (*Id*. at 15-18.)

Contrary to the instructions from the administrative law court, Plaintiff filed the current suit alleging the same "civil and constitutional violations" under the FTCA against the VA for "stealing [his] funds, defaming [his] character, and false statements [made in his] medical reports" (doc. 3 at 1.) He also alleges violations of his rights under the Second Amendment based on Defendants' denial of his "right to bear arms" (*id*. at 2) and under the Eleventh Amendment for denial of his "pursuit of happiness." (doc. 10 at 1-3.) He claims Defendants made an incorrect determination about his competency status because the "system is corrupt and broken due to internal operating procedures . . . that are economically biased." (*Id.* at 3.) He seeks a reversal of the determination that he is incompetent and $200,000.00 in damages. (*Id.* at 1-2.)

On March 25, 2016, Defendants moved to dismiss Plaintiff's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 19.) Plaintiff failed to respond.[3]

## II.  RULE 12(b)(1)

Defendants move to dismiss Plaintiff's claims under Rule 12(b)(1) for lack of subject matter jurisdiction because the Veterans Judicial Review Act (VJRA) establishes the exclusive review procedure for veteran benefit determinations. (*Id*. at 4.)

**A.     Rule 12(b)(1) Standard**

---

[3] Plaintiff sent letters to the Court on July 26, 2016, August 18, 2016, August 29, 2016, and August 31, 2016. (docs. 25, 26, 27, 28.) None of them address the arguments in the motion to dismiss. (*See* doc. 22.)

3

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Such a motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The dismissal "is not a determination of the merits," however, and "it does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. When evidence is presented with the motion to dismiss, the attack is "factual." *Williamson*, 645 F.2d at 413. In that case, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

4

Here, Defendants provide an appendix in support of their motion to dismiss that includes copies of documents related to Plaintiff's medical treatment and his prior claims against the VA. (*See* doc. 20.) Their motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. "Because Plaintiff does not contest Defendant's proffered evidence, however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09–CV–1721–M, 2010 WL 742452 at *2 (N.D.Tex. Mar. 2, 2010).

**B.     VJRA**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands,* 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States,* 556 F.3d 326, 335 (5th Cir. 2009).

The VJRA created an exclusive review procedure by which veterans can appeal benefit decisions. *See* 38 U.S.C. § 511(a); *see King v. U.S. Dept. of Veterans Affairs*, 728 F.3d 410, 414 (5th Cir. 2013) (citing *Zuspann v. Brown*, 60 F.3d 1156, 1158–1159 (5th Cir. 1995)). The VJRA made changes to the existing structure for the administrative review of such decisions and created

a new Article I Court, the Court of Veterans Appeals, that provided for "independent judicial review of the Board's final decision" regarding benefit claims. *Bates v. Nicholson*, 398 F.3d 1355, 1364 (Fed. Cir. 2005). The effect of the VJRA "was to generally place judicial review of Secretarial decisions under a law that affects the provision of benefits within the specialized review process." *Id.* (citations omitted). "Congress plainly preferred this approach" because it placed the review of veterans' claims in an independent court, rather than district courts that "lacked the necessary expertise." *Id.*

Under the statutory scheme of the VJRA, a veteran may appeal the VA's initial decision to the Board of Veterans' Appeals, and then to the United States Court of Appeals for Veterans Claims, and finally to the United States Court of Appeals for the Federal Circuit. *See King*, 728 F.3d at 410-14. Judicial review of the VA's determinations with respect to veterans' benefits is limited by 38 U.S.C. § 511(a), which provides:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits . . . to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise. 38 U.S.C. § 511(a).

Here, Plaintiff attempts to invoke jurisdiction under the FTCA for his claims of defamation, falsification of medical reports, and violation of his Second and Eleventh Amendment rights; however, these are all based on the VA's determination that he was incompetent. (docs. 3 at 1, 10 at 1-3.) To address these claims, it would be necessary to determine whether the VA was justified in classifying Plaintiff as incompetent to handle his own benefits, and this determination is not reviewable by the district courts under the limitations set forth by § 511(a). *See Price v. U.S.*, 228 F.3d 420, 422 (D.C. Cir. 2000) (affirming district court's dismissal of what it construed as a tort

6

claim "[b]ecause a determination whether the VA acted in bad faith or with negligence would require the district court to determine first whether the VA acted properly in handling [the plaintiff's] request for reimbursement," and noting that "courts have consistently held that a federal district court may not entertain claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction.") (citations omitted). This applies even though his claims are "cloaked in constitutional terms," *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994), because constitutional questions are questions of law committed to the VA's determination under § 511(a) similar to those involving the application of the statutes governing benefit determinations. *See Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992); *see also Zuspann*, 60 F.3d at 1158-60.

Plaintiff's additional claims of theft and mismanagement of funds by his appointed fiduciary are also governed by the VJRA because they fall within the confines of 38 U.S.C. §§ 6106 and 6107, which govern the misuse of veteran benefits by an appointed fiduciary and the failure of the VA Secretary to investigate or monitor a fiduciary. *See* 38 U.S.C. §§ 6106, 6107. These provisions are not exempted from the VJRA where the "[VA's] Secretary shall decide all questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits . . . to veterans," and "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court" outside of the VJRA framework. *Id.* at § 511(a). Plaintiff's claims are, in essence, a challenge to the underlying processes of the VA and its competency determination. Because he seeks review of the VA's factual and legal conclusions regarding his competency and fiduciary status, his request is outside this Court's jurisdiction. *See Zuspannn*, 60 F.3d at 1159 (veteran's claim that VA denied him adequate medical care in violation of the Due Process Clause of the Fifth Amendment was in reality an individualized challenge to the

VA's decision to deny him benefits over which district court lacked subject matter jurisdiction). Accordingly, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction in accordance with the VJRA.

### III.  OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend, however, when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff did not specifically respond to the motion to dismiss after being invited to do so. (*See* doc. 22.)  His suit is also fatally defective because he is unable to allege facts that grant subject matter jurisdiction to his claims.  Because this defect cannot be rectified by amendment, no further opportunity to amend is warranted.

### IV.  RECOMMENDATION

The motion to dismiss should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**SO RECOMMENDED on this 8th day of December, 2016.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

9